## THE AMERICAN TRUST CO. v. J. W. SMITH.

Eastern Section.    February 13, 1926.

No petition for Certiorari was filed.

1. **Bills and notes.  A trade acceptance made in Tennessee may be enforced by a foreign corporation which is not domesticated in Tennessee.**
   In an action to collect certain trade acceptances brought by a Missouri corporation which had bought the trade acceptances from the original holder and the defense was that the Missouri corporation could not enforce the acceptances because it had not been domesticated in Tennessee, held that the mere buying of the trade acceptances did not constitute doing business in Tennessee and the company could collect.

2. **Bills and notes.  A company buying trade acceptances at an eight per cent discount held to be a bona-fide purchaser.**
   In an action to recover on trade acceptances where the evidence showed that they had been purchased by an bank from the original holders at an eight per cent discount and that the bank was not connected with the holder of the acceptances and did not know anything of the transaction, held the bank was an innocent purchaser and could recover on the acceptance, although they would not be enforceable as between the parties.

Appeal from Chancery Court, of Jefferson County; Hon. E. R. Taylor, Chancellor.

Affirmed.

J. Carl Lambdin, of Jefferson City, for appellant.

J. J. Coile, of Mt. Horeb, for appellee.

THOMPSON, J.   The defendant, J. W. Smith, is a merchant at Talbott, Tennessee.   The National Novelty Import Company, a corporation with its principal office and place of business at St. Louis, Missouri, is engaged in the wholesale jewelry business.   The

complainant, American Trust Company, a Missouri corporation with its situs in St. Louis, Missouri, is engaged in the banking business.

On March 21, 1921, an agent of the National Novelty Import Company was in Talbott and took the defendant's order for a shipment of jewelry from the National Novelty Import Company at St. Louis, to the defendant at Talbott, and in payment therefor induced defendant to sign five trade acceptances, each in the sum of $59.60; and due and payable three, five, seven, nine and twelve months after date, respectively. One of these acceptancs, which is typical of the others, is as follows:

"TRADE ACCEPTANCE.          ST. LOUIS, MO.          3-21-1921. "59.60.

"Three months after date, pay to the order of ourselves at our office at St. Louis, Mo., Fifty Nine and 61/100 Dollars.

"This obligation of the acceptor arises out of the purchase of goods from the drawer.

"TO J. W. SMITH

"Talbott, Tennessee.          National Novelty Import Co.
"Due June 21, 1921.

"ACCEPTED:

"J. W. Smith.

"Signature."

The agent, of course, transmitted these trade acceptances bearing defendant's signature to the National Novelty Import Company at St. Louis, and it shipped the jewelry to the defendant at Talbott, but he at first declined to receive the jewelry. In fact the defendant testified, without contradiction, that the agent misrepresented the goods and procured his order therefor and his signature to the trade acceptances through false and fraudulent misrepresentations as to the value and equity of the jewelry, and that the defendant endeavored to cancel the order on the next day after he made it and signed the trade acceptances.

On April 28, 1921, the National Novelty Import Company sold the trade acceptances to the complainant, the American Trust Company, at an eight per cent discount. The evidence introduced by complainant is uncontradicted that this purchase by it was in the ordinary course of business, was in good faith, and without any notice of any defense to the acceptances, etc.; and that there was no connection or close relationship between complainant and the National Novelty Import Company. It does not appear that the National Novelty Import Company ever sold to complainant any other negotiable paper, or that it had any arrangement with complainant to handle its negotiable or commercial papers.

On November 7, 1923, complainant filed the original bill, making the trade acceptances exhibits thereto, seeking a recovery of $239, principal, and $27.10, accrued interest, on the trade acceptances, and of course alleged that it acquired them from the drawer in the due course of trade, for a valuable consideration and before maturity, and that it was an innocent holder, etc.

On February 16, 1924, the defendant answered the bill, denying that complainant was an innocent holder, for value and without notice of his defenses, etc., and setting up the fraudulent misrepresensations of the agent of the National Novelty Import Company and defendant's efforts to cancel the order, etc., as defenses to the suit.

On May 11, 1925, defendant filed an amendment to his answer and alleged therein that the trade acceptances were not enforceable because they were made and were to be performed in this State, while both complainant and the National Novelty Import Company were Missouri corporations and had both failed to domesticate in this State as required by the laws thereof, etc.

The Chancellor awarded complainant a recovery for $239 principal, and $49.72, interest, making a total of $288.72, and defendant has appealed to this court and assigned error as follows:

"1. The Chancellor erred in finding that the complainant, a corporation of St. Louis, Mo., in the purchase of these trade acceptances from the National Novelty Import Company, was not doing business in such manner as to preclude it from maintaining this suit.

"2. The Chancellor erred in finding that the complainant was an innocent holder of said acceptances."

The proof is meager, but it appears that an agent of the National Novelty Import Company took defendant's order for the jewelry by a personal solicitation in defendant's place of business at Talbott and that defendant signed the trade acceptances then and there. This was on March 21, 1921. The agent mailed the order and acceptances to the National Novelty Import Company at St. Louis, where they were received on March 23, 1921. The National Novelty Import Company then shipped the jewelry from its place of business in St. Louis to the defendant at Talbott. Then the National Novelty Import Company sold the acceptances to the complainant, which was an ordinary banking institution at St. Louis, and the complainant brought this suit on them after defendant had refused to pay.

Complainant bought these acceptances just as it would buy or discount any other negotiable instrument in the usual course of its business, and to hold that it is not entitled to recover because it had not domesticated in this State by filing a certified copy of its

charter in the office of the secretary of State, etc., would practically amount to a holding that no bank of a sister State could sue upon a negotiable instrument executed in this State.

There is nothing in the opinion in Henry Vogt Machine Company v. J. C. Allin, et al., which defendant has attached to his assignments of error and brief, that supports defendant's contention in this case. In that case the Henry Vogt Machine Company of Louisville, Ky., not only sold the equipment for an ice plant to the Independent Ice Company of Nashville, Tenn., but actually installed the same at Nashville; all for the price of $33,000. It took complainant two months and a half to do the installation work at Nashville, and it paid out more than $3,000 to laborers employed there, and it bought there a portion of the materials, such as piping, fittings, pump, receiver, etc., used in the installation work; whereas it could have simply sold the equipment to the Independent Ice Company F. O. B. Louisville, where its factory was located, and let the Independent Ice Company install the same. This, because there was nothing complicated or difficult about the installation work. It was the installation work at Nashville that took the transaction out of its otherwise interstate character, and constituted the doing of business in this State. And it was also shown that the Machine Company had previously sold and installed ice plants at a large number of places in this State. The court necessarily concluded that it was carrying on intrastate business in this State which was distinct and separable from its interstate business. The notes sued upon were not given in payment for the equipment which the Machine Company sold to and installed for the Ice Company, but they were contemporaneous with and in aid of that sale and installation contract, and the consideration for their execution having been paid at Nashville, and they having been executed and made payable there, the court held that there could be no recovery on them by the Machine Company because it had not complied with the laws of this State governing the right of nonresident corporations to do business here.

In the instant case we doubt whether there was anything about the transaction between defendant and the National Novelty Import Company which took the same out of a purely interstate character. In other words, we doubt whether it was anything other than a purely interstate commercial transaction, and certainly there is no proof in the record that complainant had any knowledge, notice or cause to believe that the National Novelty Import Company had violated the laws of this State in taking the trade acceptances from defendant. Neither do we think it can be said that the complainant, American Trust Company, an ordinary banking institution, by merely buying in St. Louis, one series of five

trade acceptances (which it might, and did, have to sue upon in this State to collect) thereby engaged in the doing of business in this state which rendered it necessary for it to file a certified copy of its charter in the office of the secretary of this State, etc. We are therefore of opinion that the first assignment of error is not well taken and the same is overruled.

Neither do we think the second assignment of error, which makes the question that the Chancellor erred in finding that the complainant was an innocent holder of said trade acceptances, is well taken. As has been stated, the uncontradicted proof is that complainant bought the trade acceptances before their maturity, at a discount of eight per cent, not in payment of or security for any debt or loan, but an outright purchase in the ordinary course of its business as a banking institution, and without any knowledge, notice or cause to believe that there was any defect or defense thereto. There was no connection between the complainant and the National Novelty Import Company. They were entirely separate corporations with entirely different stockholders and directors; one a banking institution, and the other a wholesale dealer in jewelry.

The defendant testified that after the National Novelty Import Company had shipped the jewelry to him, and after he had endeavored to countermand his order and cancel the contract, etc., an agreement was entered into between him and the National Novelty Import Company whereby he was to keep the jewelry for one year, sell what he could of it, remit the proceeds of these sales, and at the end of the year return that part of the jewelry which he had been unable to sell, and receive credit for it, etc. But he does not claim that complainant had any notice or knowledge of this agreement, and there is absolutely nothing in the record that would warrant the inference that complainant had any notice or knowledge or cause to believe that any such agreement had been made either before or after it bought the trade acceptances. We are therefore of opinion that the second assignment of error is not well taken and the same is overruled.

An order will be entered affirming the decree of the lower court at the defendant's cost.

Portrum and Snodgrass, JJ., concur.